# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| APRIL H.,[1] | : | Case No. 2:24-cv-03990 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in July 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since February 6, 2021. At that time, she was fifty years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 9) is summarized in the ALJ's decision ("Decision," Doc. No. 9-3 at PageID 116-35), Plaintiff's Statement of Errors ("SE," Doc. No. 11), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

2

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

3

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 6, 2021, the alleged onset date. |
| Step 2: | She has the severe impairments of rheumatoid arthritis, fibromyalgia and essential tremor. |
| | She has the nonsevere impairments of hypertension, hyperlipidemia, chronic diarrhea, inferior wall ischemia, mood disorder, and anxiety. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl, frequently climb ramps and stairs, |

4

occasionally reach bilaterally, frequently handle, finger, and feel with the left (non-dominant) upper extremity and occasionally handle, finger, and feel with the right (dominant) upper extremity."

She is unable to perform any of her past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 9-3 at PageID 121-30.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 130.)

### B.    The ALJ's Symptom Severity Analysis

After describing the applicable legal standard, the ALJ summarized Plaintiff's symptoms, subjective complaints, and reports of difficulty with daily activities, including Plaintiff's testimony during the May 2023 hearing. (Decision, Doc. No. 9-3 at PageID 125-26.) The ALJ also summarized the medical records and acknowledged some of the subjective complaints and daily activities that Plaintiff reported to her medical providers. (*Id.* at PageID 126-27.) Additionally, the ALJ described the medical opinions and prior administrative findings in the record. (*Id.* at PageID 128.)

The ALJ concluded that although Plaintiff's rheumatoid arthritis, fibromyalgia, and essential tremor could reasonably be expected to cause her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (Decision, Doc. No. 9-3 at PageID 126.) The ALJ acknowledged that Plaintiff complained of symptoms such as fatigue, pain and tenderness in various parts of her body, hand swelling, and a right-hand

5

tremor. (*Id.* at PageID 126-27.) He cited some examinations that showed synovitis of several hand and wrist joints, tenderness to palpation of several joints in the upper and lower extremities, a subtle tremor of the hands (worse on the right), and an antalgic gait. (*Id.*) The ALJ also acknowledged that Plaintiff underwent right knee aspiration and a steroid injection in September 2021. (*Id.* at PageID 127.) However, the ALJ also cited "generally unremarkable" laboratory testing and normal examination findings that included no synovitis, intact range of motion of the shoulders and knees, full strength of the knees, and an intact or normal gait. (Decision, Doc. No. 9-3 at PageID 126-27.) The ALJ noted that Plaintiff was prescribed medication and reported some improvement. (*Id.*)

Next, the ALJ summarized his evaluation of Plaintiff's reported symptoms compared to the medical evidence:

> In evaluating [Plaintiff's] symptoms under SSR 16-3p, I find the evidence only partially supports the alleged loss of functioning. Many of [Plaintiff's] symptoms have been shown to have improved at least somewhat with appropriate treatment (Exhibits 2F, p. 1-3; 3F, p. 20, 8F, p. 19, 25, 43, 10F, p. 5-6). Additionally, her rheumatoid arthritis was categorized as stable in recent treatment notes and she denied have [sic] any major flares at appointments in January and March 2023 (Exhibits 8F, p. 13; 10F, p. 5-6). Furthermore, although [Plaintiff] testified that she has her knees drained about every two months, the medical evidence does not demonstrate or state that she is undergoing knee aspiration procedures at that reported frequency. Instead, the medical evidence in the record indicated only one occasion, in September 2021, that [Plaintiff] had her knee aspirated (Exhibit 3F, p. 31-32).

(Decision, Doc. No. 9-3 at PageID 127.)

The ALJ concluded his discussion of Plaintiff's physical impairments by explaining his inclusion of the physical limitations in the RFC:

6

Based on the foregoing, the undersigned finds [Plaintiff] has the above residual functional capacity assessment, which is supported by the medical evidence and by the finding that [Plaintiff's] subjective allegations are not entirely consistent with the evidence of record as a whole. The undersigned considered the full effects of [Plaintiff's] impairments, in combination, in assessing her to be able to perform the above listed reduced range of light work with the stated postural activity, reaching, and manipulative limitations.

(Decision, Doc. No. 9-3 at PageID 128.)

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments Of Error

Plaintiff asserts three assignments of error: (1) the RFC is unsupported by substantial evidence because the ALJ "rejected the only medical opinions related to Plaintiff's ability to reach, handle, finger, and feel" and "calculated his own manipulative limitations based on his lay interpretation of the raw medical data" (SE, Doc. No. 11 at PageID 850-54); (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints under Social Security Ruling (SSR) 16-3p (*id.* at PageID 854-57); and (3) the RFC is unsupported by substantial evidence because the ALJ did not account for Plaintiff's mild limitations in the "paragraph B" areas of functioning. (*Id.* at PageID 857-61.) Finding error in the ALJ's analysis of Plaintiff's subjective complaints under SSR 16-3p, the Court does not address Plaintiff's other asserted errors and instead instructs the ALJ to address all of them on remand.

### B. Applicable Law

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and SSR 16-3p, which mandates a two-step

7

process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (S.S.A. revised and republished Oct. 25, 2017).[2]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id.* Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id.* The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id.*

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. Among other things, the ALJ must decide whether the alleged symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id.* The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

---

[2] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

8

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. Further, when determining whether an individual's statements are consistent with her symptoms, the ALJ will keep in mind that the individual's statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8. The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual

9

and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ will also consider whether the individual sought medical treatment and followed the treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. Similarly, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *9. The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "*will* explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added); *cf. Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) (the ALJ must consider the reasons for not obtaining treatment "before drawing an adverse inference from the claimant's lack of medical treatment.").

10

**C.      The ALJ Erred When Analyzing Plaintiff's Symptom Severity And The Error Was Not Harmless.**

The ALJ explained that he discounted Plaintiff's symptom severity because Plaintiff's allegations were "not entirely consistent with the medical evidence and other evidence in the record" (Decision, Doc. No. 9-3 at PageID 126) and "the evidence only partially supports the alleged loss of functioning." (*Id.* at PageID 127.) He reasoned:

> Many of [Plaintiff's] symptoms have been shown to have improved at least somewhat with appropriate treatment (Exhibits 2F, p. 1-3; 3F, p. 20, 8F, p. 19, 25, 43, 10F, p. 5-6). Additionally, her rheumatoid arthritis was categorized as stable in recent treatment notes and she denied have [sic] any major flares at appointments in January and March 2023 (Exhibits 8F, p. 13; 10F, p. 5-6).

(*Id.*) The Court concludes that the ALJ's findings about Plaintiff's symptom severity are unsupported by substantial evidence, and that his analysis does not comply with Social Security Ruling 16-3p. Because the ALJ's error was not harmless, the Court reverses and remands the ALJ's decision for further proceedings.

**1.      Substantial evidence does not support ALJ's findings that Plaintiff's symptoms have improved with treatment, and her rheumatoid arthritis has stabilized.**

The ALJ found that many of Plaintiff's symptoms improved at least somewhat with treatment, and that her rheumatoid arthritis had stabilized. These findings are not supported by substantial evidence because the record shows that Plaintiff required many adjustments to her medications and continued to exhibit and complain of significant symptoms despite those medication changes. The ALJ's summary of the medical evidence impermissibly minimized or overlooked those portions of the record that undermined his findings and conclusions.

11

For example, the ALJ summarized a February 2021 primary care treatment note as follows: "To begin, around [Plaintiff's] alleged onset date, she was seen complaining of fatigue and musculoskeletal pain but reported being able to perform her activities of daily living. She had undergone laboratory testing, which had been generally unremarkable, but was referred to rheumatology for further work up (Exhibit 1F, p. 3, 7)." Decision, Doc. No. 9-3 at PageID 126 (citing AR, Doc. No. 9-7 at PageID 391, 395).) However, when Plaintiff presented to the Waverly Family Health Center in February 2021, she complained of "*significant severe* fatigue" and "*moderate to severe* diffuse pain" with myalgias and polyarthralgias. (AR, Doc. No. 9-7 at PageID 394 (emphasis added).) The ALJ did not note the severity of Plaintiff's fatigue and pain.

The ALJ next summarized the March 2021 record from Plaintiff's initial visit with a rheumatologist and stated that Plaintiff complained of "pain in various parts of her body and having swelling in her knuckles." (Decision, Doc. No. 9-3 at PageID 126 (citing AR, Doc. No. 9-7 at PageID 437).) The ALJ did not acknowledge Plaintiff's statements to her provider that although her joint pain was not constant, she had "more bad days than good days," her pain was an eight-and-a-half out of ten (with ten being the highest level), and she felt "extremely fatigued all of the time." (AR, Doc. No. 9-7 at PageID 437, 439.) After reviewing the laboratory findings in early April 2021, Rebecca Brauch, M.D. diagnosed seronegative rheumatoid arthritis and prescribed hydroxychloroquine and acetaminophen with codeine. (*Id.* at PageID 437.)

The ALJ summarized a May 2021 rheumatology visit as follows: "She had some improvement in her synovitis at a follow-up appointment in May 2021 but reported still

12

having some tenderness in her wrists and hands." (Decision, Doc. No. 9-3 at PageID 126 (citing AR, Doc. No. 9-7 at PageID 427-28).) This description understates Plaintiff's complaints of "constant and achy" right wrist, shoulder, and foot pain that she rated at a seven out of ten. (*Id*. at PageID 427.) Plaintiff also complained of fatigue and difficulty sleeping due to pain. (*Id.*) Nurse Burris increased Plaintiff's hydroxychloroquine dosage and prescribed hydrocodone. (*Id.* at PageID 428.)

Next, the ALJ described a July 2021 rheumatology visit as follows: "[Plaintiff] stated that she was feeling better overall and having less swelling" after the medication changes. (Decision, Doc. No. 9-3 at PageID 127 (citing AR, Doc. No. 9-7 at PageID 417).) The ALJ did not acknowledge that Plaintiff complained of pain in her hands, knees, and back that was "achy and stabbing" at times, and that she rated at six out of ten. (AR, Doc. No. 9-7 at PageID 417.) Plaintiff also reported a continued right-hand tremor. (*Id.* at PageID 418.)

The ALJ did acknowledge that Plaintiff experienced a likely rheumatoid arthritis flare in September 2021 and thereafter underwent a right-knee aspiration procedure and received a steroid injection. (Decision, Doc. No. 9-3 at PageID 127.) However, the ALJ stated that "[Plaintiff] reported an improvement in the swelling of her knee in November 2021 and denied other joint pain or swelling (Exhibit 3F, p. 20)." (*Id.* (citing AR, Doc. No. 9-7 at PageID 543).) This statement is incorrect. Although Plaintiff did report that her right-knee swelling had improved, she also stated that she continued to have right knee pain. (AR, Doc. No. 9-7 at PageID 543.) She said the pain was constant and achy, although non-radiating, and she rated her pain at a seven out of ten. (*Id.*) She also said

13

that walking aggravated the pain. (*Id.*) Further, although a physical examination showed no right knee swelling, Plaintiff demonstrated decreased right-knee range of motion because of the pain. (*Id.* at PageID 544.) Plaintiff's orthopedist indicated that she wanted to "work on weaning [Plaintiff] off hydrocodone" and so decreased her dosage, but she continued hydroxychloroquine and started Plaintiff on a trial of etodolac. (*Id.*)

Despite frequent adjustments to her medications, Plaintiff's symptoms continued to wax and wane, and she reported elevated symptoms more often than not. The ALJ summarized a February 2022 rheumatology progress note as follows: "In early 2022, [Plaintiff] reported that her swelling comes and goes but that she has difficulty raising her arms due to pain. Upon examination, she had no synovitis but had diffuse tenderness to palpation of several joints (Exhibit 3F, p. 8-11)." (Decision, Doc. No. 9-3 at PageID 127 (citing AR, Doc. No. 9-7 at PageID 531-34).) The ALJ did not acknowledge Plaintiff's additional complaints of right knee and right ankle pain. Nor did the ALJ acknowledge Plaintiff's estimate that her pain level was five to six out of ten "when resting" and over ten "with movements." (AR, Doc. No. 9-7 at PageID 533-34.) Plaintiff also said that etodolac only partially relieved her pain and "hurts her stomach." (*Id.* at PageID 534.) Additionally, the physical examination showed decreased range of motion of her shoulders, which was consistent with her complaints of difficulty raising her arms. (*Id.* at PageID 534.) Deena Hassuna, M.D. indicated that she "suspect[ed] fibromyalgia." (*Id.*) Dr. Hassuna discontinued etodolac "due to likely gastritis" and prescribed duloxetine. (*Id.*) She also started Plaintiff on a trial of Celebrex. (*Id.*)

14

The ALJ stated that a physical examination in March 2022 showed a resting right-hand tremor, and that Plaintiff ambulated normally and was able to move all extremities normally. (Decision, Doc. No. 9-3 at PageID 127 (citing AR, Doc. No. 9-7 at PageID 528).) Although these statements are correct, the ALJ did not note that Plaintiff's right hand showed decreased grip strength (three out of five, with five being greatest strength). (AR, Doc. No. 9-7 at PageID 528.)

The ALJ summarized the records from May through December 2022 as follows:

Her dosage of propranolol was increased in May 2022 and by June 2022 [Plaintiff] reported that the medication was very helpful in controlling her tremor (Exhibit 8F, p. 43). She continued to report improvement in her tremor in September 2022 (Exhibit 8F, p. 25). Similarly, in December 2022, [Plaintiff] reported that she was doing well and that further increase in the dosage of propranolol had helped somewhat and that sometimes she has no tremor. She was also started on primidone at that time for her tremor (Exhibit 8F, p. 19-21).

(*Id.* (citing AR, Doc. No. 9-8 at PageID 675-77, 681, 699).) These statements are not wholly supported by the records. Although Plaintiff did state in June 2022 that the increase in propranolol had been "really helpful for tremor control," she also said that she "would like to see if she [could] get the tremor under even better control," and reported that she might be developing a right-leg tremor. (AR, Doc. No. 9-8 at PageID 699.) And although Plaintiff did state in September 2022 that her tremor had improved, she also said that she was only "tremor free" on "rare" occasions, still "spills coffee in the mornings and the tremor bothers her in the evenings." (*Id.* at PageID 681.) Dr. Wolf responded to these complaints by again increasing Plaintiff's propranolol dosage. (*Id.* at PageID 683.) The ALJ also did not note Dr. Wolf's consistent physical examination findings of a

15

"constant [right upper extremity] resting, postural, and action tremor," a right-greater-than-left "postural tremor with arms outstretched," and a narrow-based and antalgic gait with pain in the hips and knees. (*Id.* at PageID 676, 682, 700, 713.)

The ALJ did not address a record from a September 2022 rheumatology visit that documented Plaintiff's continuous complaints. During the visit, Plaintiff complained of arthritis pain that was worse in her right shoulder and right knee. (AR, Doc. No. 9-8 at PageID 694.) Although Plaintiff said that the pain "comes and goes," she rated her pain at a seven out of ten, reported difficulty raising her arms due to pain, and said that moving her joints and walking aggravated the pain. (*Id.*) A physical examination showed diffuse tenderness to palpation in her hands, forearms, shoulder blades, and upper chest, as well as decreased range of motion of her shoulders. (*Id.*) Nurse Burris increased Plaintiff's duloxetine dosage. (*Id.* at PageID 695.)

As noted, the ALJ discounted the severity of Plaintiff's reported symptoms because her "rheumatoid arthritis was categorized as stable in recent treatment notes and she denied have [sic] any major flares at appointments in January and March 2023 (Exhibits 8F, p. 13; 10F, p. 5-6)." (Decision, Doc. No. 9-3 at PageID 126.) This reasoning is not wholly consistent with the cited records. Although physical examinations on these occasions showed normal ambulation and no synovitis, Plaintiff's rheumatologist also documented diffuse tenderness in her hands, forearms, shoulders, and chest, as well as decreased range of motion of the shoulders. (AR, Doc. No. 9-8 at PageID 670, 812.) Additionally, Plaintiff rated her pain level as six out of ten in January 2023 (*id.* at PageID 669) and seven out of ten in March 2023 (*id.* at PageID 811).

16

In sum, although Plaintiff's physical examinations showed some normal findings and her pain level and tremor sometimes did better on medication, the overall record shows that Plaintiff experienced significant symptoms despite taking her medications. The ALJ's failure to acknowledge and account for significant evidence that supports Plaintiff's subjective complaints—including evidence that Plaintiff required many adjustments to her medications, and continued to exhibit and complain of significant pain symptoms despite these changes—signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

The Court recognizes that the ALJ is not required to address every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that he implicitly resolved" any conflicts in the evidence. *Id.* Here, the ALJ's apparent failure to consider significant evidence that contradicts his conclusions shows that the ALJ did not resolve the conflicts in the evidence. For these reasons, the undersigned concludes that the ALJ's findings regarding Plaintiff's symptom severity are not supported by substantial evidence.

17

**2.** **Substantial evidence does not support the ALJ's analysis of Plaintiff's daily activities, which does not comport with Social Security Ruling 16-3p.**

Social Security Ruling 16-3p requires ALJs to consider a claimant's daily activities when evaluating the severity of her symptoms. SSR 16-3p at *7. This analysis must "be consistent with and supported by the evidence." *Id*. at *10. Similarly, the Sixth Circuit recognizes that an ALJ "may consider a claimant's household and social activities in evaluating complaints of daily pain." *Blacha v. Sec'y of Health and Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, the ALJ "may not take part of [Plaintiff's] testimony and disregard the rest." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (citations omitted). Instead, the ALJ's analysis "must be based upon the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).

Here, the ALJ addressed only a few of Plaintiff's reported difficulties with daily activities. The ALJ acknowledged that Plaintiff complained of difficulty with raising her arms above her head and with standing for long periods. (Decision, Doc. No. 9-3 at PageID 126.) The ALJ acknowledged that Plaintiff reported it was "difficult for her to do her hair because of her tremor." (*Id.*) Finally, the ALJ concluded that "[t]he medical evidence does not entirely support the extent of [Plaintiff's] subjective allegations," explaining that "around [Plaintiff's] alleged onset date, she was seen complaining of fatigue and musculoskeletal pain but reported being able to perform her activities of daily living." (Decision, Doc. No. 9-3 at PageID 126.) The ALJ did not address Plaintiff's other reported difficulties with daily activities in the Decision.

18

Several records documented Plaintiff's reported difficulties with other daily activities. Plaintiff told her rheumatologist in May 2021 that she was not sleeping well because of pain. (AR, Doc. No. 9-7 at PageID 427.) Plaintiff told her primary care provider in March 2022 that for the past year she had been dropping objects from her right hand. (*Id.* at PageID 527.) Plaintiff also reported several physical difficulties during the consultative psychological evaluation in March 2022. For example, Plaintiff stated that although she could prepare meals "without significant difficulty," she did need assistance with grooming and hygiene. (*Id.* at PageID 636.) Plaintiff also complained about having difficulty with falling and staying asleep, completing household chores, and shopping for groceries. (*Id.* at PageID 636.)

In an April 2022 Disability Report, Plaintiff indicated that she had experienced a change in her daily activities since she completed a prior report in August 2021. (AR, Doc. No. 9-6 at PageID 335.) Plaintiff stated: "I now have to have help with housework. Sometimes I need help dressing. I can no longer walk my dogs by myself." (*Id.*) In a July 2022 Disability Report, Plaintiff stated:

> There are days that I need help washing my hair. My house hasn't been cleaned properly in months. I do the best I can but it's a mess. I drop things with my right hand, I just let go of things. My right arm shakes terribly. Standing for long periods of time causes other problems, between the Rheumatoid Arthritis and the Ostio Arthritis [sic], the pain in my joints is terrible.

(*Id.* at PageID 347.) Plaintiff also told her neurologist in September 2022 that she spilled her coffee in the mornings. (AR, Doc. No. 9-8 at PageID 681.)

19

The ALJ did not acknowledge or address these reported difficulties with daily activities when he analyzed Plaintiff's symptom severity. Instead, the ALJ appeared to rely primarily on one record dated just a few weeks after the alleged disability onset date. (*See* Decision, Doc. No. 9-3 at PageID 126 (citing AR, Doc. No. 9-7 at PageID 395).) Accordingly, the ALJ's finding that "the evidence only partially supports the alleged loss of functioning" is not "consistent with and supported by the evidence" as required by SSR 16-3p. Nor is it supported by substantial evidence. Instead, the ALJ's evaluation of Plaintiff's daily activities provides another example of the ALJ's impermissibly selective review of the record. *Minor,* 513 F. App'x at 435.

Contending that the ALJ did not err in his evaluation of Plaintiff's daily activities, Defendant argues: "[P]laintiff reported caring for her mother with dementia …. Plaintiff's testimony regarding her alleged difficulties strained credibility. Instead of being able to perform her household tasks, she testified that her 'disabled' and 'terminal' husband performed them …." (Mem. In Opp., Doc. No. 13 at PageID 878 (citing AR, Doc. No. 9-2 at PageID 62, 72; AR, Doc. No. 9-7 at PageID 635; AR, Doc. No. 9-8 at PageID 662).) But the ALJ did not rely on this rationale or evaluate this evidence in the Decision. The Court "cannot accept the Commissioner's after-the-fact arguments as a substitute for the ALJ's own reasons for his findings." *Giddens v. Comm'r of Soc. Sec.*, No. 5:21-cv-1431, 2022 WL 2195007, at *11 (N.D. Ohio May 4, 2022), *report and recommendation adopted sub nom. Giddens v. Kijakazi*, No. 5:21-cv-01431, 2022 WL 2193035 (N.D. Ohio June 17, 2022) (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

Asserting that "[t]he ALJ properly found that Plaintiff's activities of daily living demonstrated better mental functioning than alleged," Defendant argues that "[t]herefore, Plaintiff's physical difficulties would not contradict the ALJ's findings." (Mem. In Opp., Doc. No. 13 at PageID 878.) To the extent that the Court understands this argument, it does not persuade the Court that substantial evidence supports the ALJ's analysis of Plaintiff's activities of daily living—particularly since the ALJ did not acknowledge, much less address, the other difficulties that Plaintiff reportedly experienced.

Defendant also argues that the Court "should defer to the ALJ's findings even if there is substantial evidence in the record that would have supported an opposite conclusion." (Mem. In Opp., Doc. No. 13 at PageID 878 (citing *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713-14 (6th Cir. 2012).) This assertion, while true, misses the mark. The law does "presuppose[] that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen*, 800 F.2d at 545; *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009). And the ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Smith-Johnson*, 579 F. App'x at 437 n.11. The ALJ's failure to consider significant evidence that contradicts his conclusions about

21

Plaintiff's symptom severity and daily activities shows that the ALJ did not resolve the conflicts in the evidence and signifies an impermissibly selective review of the record.

In sum, the ALJ's analysis of Plaintiff's symptom severity did not comply with SSR 16-3p and his factual findings are not supported by substantial evidence. The ALJ's error can be excused as harmless unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers*, 582 F.3d at 654. Here, the Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. Therefore, reversal and remand is required.

## V.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the

record as necessary, particularly as to Plaintiff's subjective complaints, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.     Plaintiff's Statement of Errors (Doc. No. 11) is GRANTED;

2.     The Court REVERSES the Commissioner's non-disability determination;

3.     No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.     This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.     This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
